No. 01-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 23

WILLIAM MacPHEAT,

   Plaintiff and Appellant,

  v.

STEVEN L. SCHAUF and FARMERS
INSURANCE GROUP OF COMPANIES

   Defendants and Respondents.

FILED

FEB 1 2 2002

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
      In and for the County of Flathead,
      The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

     Will MacPheat, Missoula, Montana (*pro se*)

   For Respondents:

     K. James Heckathorn, Crowley, Haughey, Hanson, Toole & Dietrich,
     Kalispell, Montana (Schauf); William R. Bieler, Williams & Ranney,
     Missoula, Montana (Farmers)

Submitted on Briefs: August 23, 2001

Decided: February 12, 2002

Filed:



          Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant William MacPheat filed a complaint for libel in the Eleventh Judicial District Court, Flathead County, against Respondents Steven L. Schauf and Farmers Insurance Group of Companies ("FIGC"). Farmers Insurance Exchange ("FIE") made a limited appearance and moved the District Court to quash MacPheat's service of process on FIGC and dismiss FIGC from the action on the grounds that FIGC is not a legal entity, nor MacPheat's employer. The District Court granted FIE's motions and MacPheat appeals. We reverse and remand.

¶2 The sole issue on appeal is whether the District Court erred when it quashed the service of process on FIGC and dismissed FIGC from the action.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On July 25, 1997, MacPheat filed a complaint in the First Judicial District Court, Lewis and Clark County, against Schauf and FIGC. In the complaint, MacPheat alleged that Schauf wrote a libelous letter regarding MacPheat's character, on FIGC letterhead, to Judge Katherine Curtis who was presiding over one of MacPheat's criminal proceedings. MacPheat alleged that Schauf wrote the letter with malicious intent while acting in his official capacity as an employee of FIGC. The complaint alleged that this letter compromised his constitutional right to be tried by an impartial tribunal. On October 8, 1997, the matter was transferred to the Eleventh Judicial District Court, Flathead County.

¶4 In the ensuing months, the parties filed a litany of motions in the District Court and applications for extraordinary writs with this Court regarding, among other things, the sufficiency of the FIGC summons and various discovery requests. Ultimately, on May 25, 2000, MacPheat timely issued an amended summons and subsequently served FIGC. On July 20, 2000, FIE, an inter-insurance exchange affiliated with FIGC, made a limited appearance to move the District Court to quash MacPheat's service of process on FIGC and dismiss FIGC from the action.

¶5 In support of its motions, FIE attached the affidavit of Christopher R. Pflug, Assistant Secretary of FIE. Pflug's affidavit stated that FIGC is simply "a federally registered service mark" and "not a legal entity." Further, the affidavit maintained that FIE employed Schauf, not FIGC. Therefore, FIE argued that FIGC is not a legal entity upon which service of process can be made and maintained that MacPheat's complaint failed to state a claim upon which relief could be granted because FIGC did not employ Schauf.

¶6 On August 16, 2000, the District Court granted FIE's motion to quash MacPheat's service of process on FIGC and dismiss FIGC from the action. On August 23, 2000, the District Court entered its judgment dismissing MacPheat's claims against FIGC with prejudice. On January 26, 2001, the District Court certified its judgment as final pursuant to Rule 54(b), M.R.Civ.P. MacPheat appeals.

## STANDARD OF REVIEW

¶7 We review *de novo* a district court's ruling on a motion to dismiss under Rule 12(b)(6), M.R.Civ.P. *Powell v. Salvation Army* (1997), 287 Mont. 99, 102, 951 P.2d 1352, 1354. The issues of whether the court properly quashed service of process and granted a Rule 12(b)(6), M.R.Civ.P., motion to dismiss present questions of law. *See Fonk v. Ulsher* (1993), 260 Mont. 379, 383, 860 P.2d 145, 147 and *Missoula YWCA v. Bard*, 1999 MT 177, ¶ 3, 295 Mont. 260, ¶ 3, 983 P.2d 933, ¶ 3. This Court reviews issues of law to determine whether the district court's application or interpretation of the law is correct. *Williams v. Zortman Mining, Inc.* (1996), 275 Mont. 510, 512, 914 P.2d 971, 972-73.

## DISCUSSION

¶8 Did the District Court err when it quashed the service of process on FIGC and dismissed FIGC from the action?

¶9 FIGC argues that the District Court properly quashed service of process and dismissed it from the action for three reasons. First, FIGC argues that it is not a "person" subject to service of process for purposes of Rule 4A, M.R.Civ.P. Second, FIGC insists that it is not a corporation, partnership, or any other type of business entity capable of sustaining suit. FIGC contends that it is merely a registered service mark used by Farmers' companies to distinguish their services from others. Third, FIGC indicates that MacPheat's complaint imputes liability to it under the theory of respondeat superior. However, FIGC maintains that

4

it has never employed the alleged tortfeasor, Steven Schauf. Therefore, FIGC urges us to affirm the District Court's order.

¶10 In its limited appearance, FIE presented all of these arguments to the District Court in support of its motion to quash service of process on FIGC and dismiss FIGC from the action. The District Court granted FIE's motions but provided no indication of which argument it found compelling or determinative. The District Court simply stated that it considered the briefs of both parties and granted FIE's motions. Therefore, we will address the legal service of process and dismissal issues raised by the parties and leave the factual inquiry regarding the respondeat superior allegation to the District Court on remand.

¶11 Interestingly, FIGC submitted the same "service mark" argument presented here to the Oklahoma Supreme Court in *Oliver v. Farmers Ins. Group of Cos.* (Okla. 1997), 941 P.2d 985. There, the plaintiff filed a bad faith suit against FIGC and three other defendants. FIGC filed a motion for summary judgment which referenced an affidavit provided by FIE's assistant secretary. The affiant stated that FIGC had never been a corporate entity and that FIGC was merely a federally registered service mark used in marketing Farmers' services. Therefore, FIGC argued that it was not subject to legal process and was an improper defendant.

¶12 The Oklahoma Supreme Court acknowledged that under the traditional common law, a voluntary, unincorporated association could not be sued under its name because it did not have a legal status apart from that of its individual members. *Oliver*, 941 P.2d at 988.

5

However, the court also recognized that "[b]ecause of the unjustness of the rule in present day society, it has been modified in many jurisdictions." *Oliver*, 941 P.2d at 988. Oklahoma statutorily modified the common law rule in 12 O.S.1991 § 182, which provides:

> When any two or more persons associate themselves together and transact business for gain or speculation under a particular appellation, not being incorporated, they may be sued by such appellation without naming the individuals composing such association and service of process may be had upon such association by personal service as provided by law for service of summons in civil actions . . . .

Therefore, the Oklahoma Supreme Court dismissed FIGC's service mark defense. In so doing the court stated:

> No one suggests that the companies which 'associate themselves together' in the *Farmers Group do not 'transact business for gain.'* Whatever else Farmers Insurance Group of Companies does, it is clearly a name under which a number of Farmers-related companies insure against risks. Under our section 182 Oliver may properly bring suit against Farmers Insurance Group of Companies.

*Oliver*, 941 P.2d at 988.

¶13 We find the reasoning in this case persuasive. Rule 4A, M.R.Civ.P., defines "person" as follows:

> **Definition of person.** As used in this rule, the word 'person,' whether or not a citizen or resident of this state and whether or not organized under the laws of this state, includes an individual whether operating in the individual's own name or under a trade name; an individual's agent or personal representative; a corporation; a limited liability company; a business trust; an estate; a trust; a partnership; *an unincorporated association; and any two or more persons having a joint or common interest* or any other legal or commercial entity. [Emphasis added.]

Clearly, if FIGC is to qualify as a person within the ambit of Rule 4A, M.R.Civ.P., then it must do so as an "unincorporated association" or "any two or more persons having a joint or common interest."

¶14     This Court has defined an "unincorporated association" as a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective. *Associated Press v. Senate Republican Caucus* (1997), 286 Mont. 172, 179, 951 P.2d 65, 69. FIGC states in its brief that it is an identity "used by Farmers Insurance Exchange and several other insuring entities for advertising and marketing." Certainly, the advertising and marketing of Farmers' services under the FIGC name constitutes the promotion of a common enterprise by voluntary groups, formed by mutual consent. Further, under the same rationale, FIGC is comprised of two or more persons which endeavor to cultivate a common interest. Therefore, we hold that FIGC is a "person" within the contemplation of Rule 4A, M.R.Civ.P. To conclude otherwise and sanction FIGC's proposed intangible classification would unnecessarily restrict those who can be sued in Montana's courts and fly directly in the face of the open courts provision of Article II, Section 16 of the Montana Constitution. *See Associated Press*, 286 Mont. at 180, 951 P.2d at 70.

¶15     Further, for purposes of designating FIGC as a named defendant, § 25-5-104, MCA, contains language strikingly similar in tone and effect to Oklahoma's statute referenced above. Section 25-5-104, MCA, provides:

7

> **Action against business association.** When two or more persons associated in any business transact such business under a common name, whether it comprise the names of such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates in the same manner as if all had been named defendants and had been sued upon their joint liability.

As in *Oliver*, no one here suggests that the companies associated with FIGC do not transact business. However, FIGC does maintain that the companies affiliated with it do not transact business under the FIGC common name. Yet, the purported libelous correspondence and a sample Farmers' automobile insurance policy appear to belie this proposition.

¶16    MacPheat alleged in his complaint that the April 12, 1995 letter from Schauf to Judge Curtis was written "as an official act of Mr. Schauf's employment with [FIGC]." The District Court made no findings as to whether Schauf was transacting business in writing this letter. If Schauf wrote the letter in the ordinary course of his employment, it certainly contained no reference to any of FIGC's affiliated organizations and provided no indication that he acted as an employee of any entity other than FIGC. Instead, the letterhead claimed "America Can Depend on Farmers" and was emblazoned with FIGC's name and logo.

¶17    Further, as a sample Farmers' automobile insurance policy indicates, FIGC is clearly a name under which a number of Farmers-related companies insure against risks. The policy, issued approximately six months after Schauf composed his letter, does denote FIE as the issuing company. However, this policy contains several references to the FIGC common name. The cover sheet includes FIGC's logo below the message "Important Insurance

8

Documents Inside." A thank you letter from the insurance agent to the customer contains only FIGC's name and address on the letterhead. Additionally, the policy includes an anti-stacking notice to the customer signed by none other than FIGC. Accordingly, we conclude that FIGC constitutes a common name under which its affiliates transact business. Therefore, pursuant to § 25-5-104, MCA, MacPheat may properly serve and bring suit against FIGC.

¶18 The effect of our holding is to allow MacPheat to file suit against FIGC and serve it with legal process. However, we must point out that § 25-5-104, MCA, is not self-executing in terms of liability. Section 25-5-104, MCA, does provide a convenient procedure by which a plaintiff can bring the members of an association before Montana's courts without naming and serving process upon them individually. *See Graham v. Lloyd's of London* (S.C. Ct. App. 1988), 371 S.E.2d 801, 804. Yet, this statute does not alter the substantive burden of proof associated with the cause of action. Once a plaintiff brings an association before the court pursuant to § 25-5-104, MCA, he or she must still establish the liability of the association's members, if any, according to the applicable substantive law.

¶19 In summary, we hold that the District Court erred as a matter of law when it quashed service of process on FIGC and dismissed it from the action. Pursuant to Rule 4A, M.R.Civ.P., and § 25-5-104, MCA, FIGC is subject to the jurisdiction of Montana's courts and to service of process. However, on remand, MacPheat must still establish the substantive

9

elements of his case against the named Defendants under the theory of liability delineated in the complaint.

¶20    Reversed and remanded for proceedings consistent with this Opinion.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices